Appeal of **TAMPA SHIPBUILDING &**    **Docket No. 564.**
        **ENGINEERING CO.**

Income received in 1919 from the United States Shipping Board Emergency Fleet Corporation for the construction of ships requisitioned in 1917 under authority of the act of June 15, 1917, is income from a Government contract within the meaning of section 301 (c) (1) of the Revenue Act of 1918.

Submitted January 14, 1925; decided January 31, 1925.

*F. S. Bright* and *H. S. Hinrichs, Esqs.*, for the taxpayer.
*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

This appeal involves income and profits taxes for the calendar years 1918, 1919, and 1920, and is from a deficiency in the amount of $32,322.03 determined by the Commissioner and set forth in the Commissioner's deficiency letter dated September 11, 1924. Oral and documentary evidence was introduced at the hearing, from which the Board makes the following

FINDINGS OF FACT.

1. The taxpayer is a Florida corporation with its principal place of business at Tampa, Fla., and during the period involved in this appeal it was engaged in the construction of steamships.
2. In March, 1917, the taxpayer was engaged, under contract with the Cunard Steamship Co. (Ltd.), of Great Britain, in the construction of two cargo steamships to be named the *Lithopolis* and the *Everglades*, and designated during the period of construction as Hull 31 and Hull 32, respectively. By the 27th of August, 1917, the Cunard Steamship Co., in accordance with its contract with the taxpayer, had paid 30 per cent of the total contract price of $612,500 on account of each ship under construction.

3. On August 29, 1917, the United States Shipping Board Emergency Fleet Corporation, under authority of an act of Congress, requisitioned the two ships under construction by the taxpayer. The ships, with such changes in the construction and such extras as were ordered by the Emergency Fleet Corporation, were thereafter completed and delivered to the Fleet Corporation.

4. On January 18, 1918, a tripartite agreement was executed by the Emergency Fleet Corporation, the Cunard Steamship Co., and the taxpayer, whereby the Cunard Co. acknowledged receipt of payment of its claim on account of the requisition of the ships, waived delivery of the ships by the taxpayer company, released the taxpayer and the Fleet Corporation from liability to it under the original contracts for the construction of the ships, and assigned to the Fleet Corporation all its right, title, and interest in the ships and the materials therefor. In this agreement the taxpayer released the Cunard Co. and the Fleet Corporation from all claims arising out of the original contract. Subsequently the taxpayer executed bills of sale whereby it transferred title to the ships to the Fleet Corporation.

### DECISION.

The deficiency determined by the Commissioner is approved.

### OPINION.

GRAUPNER: The taxpayer brings its appeal to this Board on the following allegations of error by the Commissioner:

1. In not allowing accelerated depreciation on plant and equipment during the period January 1, 1918, to June 30, 1919.

2. In holding that seventy per cent (70%) of the income of the taxpayer in the year 1919 was derived from a Government contract and taxable at the rate prescribed by the Revenue Act of 1918.

At the hearing counsel for the taxpayer agreed to waive its claim to accelerated depreciation. This leaves but one question for the Board to decide, namely, whether the amount received from the Emergency Fleet Corporation in payment for the two vessels constructed in pursuance of the requisition issued in August, 1917, constituted income from a Government contract within the meaning of section 301 (c) of the Revenue Act of 1918. This section provides in part:

For the taxable years 1919 * * * there shall be levied, collected, and paid upon the net income of every corporation which derives in such year a net income of more than $10,000 from any Government contract or contracts made between April 6, 1917, and November 11, 1918, * * * a tax equal to * * * (1) Such a portion of a tax computed at the rates specified in subdivision (a) as the part of the net income attributable to such Government contract or contracts bears to the entire net income.

Section 1 of Title I of the 1918 act provides that:

The term "Government contract" means (a) a contract made with the United States, or with any department, bureau, officer, commission, board, or agency, under the United States and acting in its behalf, or with any agency controlled by any of the above if the contract is for the benefit of the United States * * *.

Clearly the United States Shipping Board Emergency Fleet Corporation was such an agency of the United States as is contemplated

by the language of the Revenue Act of 1918. No question on this point has been raised and we have only to determine whether the act of constructing the ships under the Fleet Corporation's requisition was a construction under contract.

It was argued by counsel that the construction of the ships under the Fleet Corporation's requisition was mandatory; there was no meeting of the minds; the fundamental principle of mutuality in contracts was entirely missing; and hence there was no contract between the taxpayer and the Fleet Corporation. While it can not be doubted that the requisition was mandatory, we can not overlook the fact that compensation was offered and the act of the taxpayer in completing construction pursuant to the requisition and subsequent orders for changes and extras must be construed at least as an implied acceptance of the terms of a contract.

The case of *Brooks-Scanlon Corporation* v. *United States*, 265 U. S. 106, while presenting a different question, involved similar facts. In that case the court held that, under the requisition issued, the Fleet Corporation put itself in the shoes of the owner of the contract with the shipbuilding company and took from the owner and appropriated to the use of the United States all the rights and advantages that an assignee of the contract would have had.

We must therefore hold that construction of the ships under the requisition of the Fleet Corporation amounted to a Government contract within the meaning of the Revenue Act of 1918 and that the deficiency was properly determined.